# JOSEPH & KIRSCHENBAUM LLP

Attorneys at Law

| | |
|---|---|
| Charles Joseph | 32 Broadway, Suite 601 |
| D. Maimon Kirschenbaum | New York, NY 10004 |
| Denise Schulman | Phone 212) 688-5640 |
| Josef Nussbaum | Fax (212) 688-2548 |
| Lucas Buzzard | www.jk-llp.com |

May 9, 2018

**VIA ECF AND EMAIL (ALCarterNYSDChambers@nysd.uscourts.gov)**

Honorable Andrew L. Carter
United States District Court
Southern District of New York
Thurgood Marshall United States Courthouse
40 Foley Square
New York, NY 10007

Re:   *Quionones v. Babbo, LLC et al,* **17 CV 8302 (ALC)**
*Jara v. Felidia Inc. et al*, **17 CV 9622 (ALC)**

Dear Judge Carter,

We represent Plaintiff Oliver Quinones, a former employee at Babbo restaurant in the matter styled *Quinones v. Babbo, LLC et al* (the "*Babbo* case").  The *Babbo* case alleges wage and hour claims on behalf of a putative class of current and former food-service employees at Babbo restaurant (the "putative *Babbo* class").  The second case captioned above, *Jara v. Felidia Inc. et al*, was brought by a former employee of Felidia restaurant on behalf of a group of employees at other restaurants which until this past Monday did not include Babbo restaurant (the "*Felidia*" case).  Defendants in both cases, who are all represented by Fox Rothschild LLP, through a web of lies to the Court and to us, held our case at bay pending a scheduled May 14th mediation.  During this time, Defendants' counsel was secretly negotiating a "settlement" of the putative *Babbo* class claims with counsel in the *Felidia* case, which at no time (until Monday's sham proposed amendment to their Complaint) related to Babbo employees.  Defendants then hurried to submit a slapdash settlement agreement in the *Felidia* case, letting us know just four business days before the *Babbo* mediation that they had settled the claims of the putative *Babbo* class.  For the reasons set forth below, we write to respectfully request that the Court (a) sanction Defendants in the *Babbo* case for engaging in vexatious and wasteful litigation, and (b) deny the motion for preliminary approval of a class action settlement filed in the *Felidia* case, because it was the product of collusion and is patently unfair to the putative *Babbo* class.

## I.    BACKGROUND

On October 27, 2017, our office filed the *Babbo* Complaint.  On December 7, 2017, the Lee Litigation Group, PLLC ("Lee Litigation") filed a class action Complaint against a number

of restaurants owned, in part, by Lydia Bastianich.  The named plaintiff in the *Felidia* case worked at only one of the restaurants named in that Complaint, Felidia, and did not name Babbo restaurant or discuss any Babbo employees in his Complaint.

In November 2017, the Court referred the *Babbo* case to early mediation which was Ordered to take place on or before January 15, 2018.  Less than one week before this deadline, on January 9, 2018, Defendants' counsel informed the Court that they were faced with some potential conflicts of interest between the Parties they represent and thus issued a request—which the Court granted—to allow them to schedule a mediation on or before February 28, 2018. (*Babbo* Dkt. No. 14.)  Yet only *two days later*, on January 11, 2018, unbeknownst to our office, Defendants' counsel informed the Court that they had already set up a private mediation, to take place on April 19, 2018, in the *Felidia* case. (*Felidia* Dkt. No. 32.)  Nowhere in this letter did Defendants inform the Court of their intention to settle the claims of putative *Babbo* class members who were not identified in the *Felidia* lawsuit and for whom Lee Litigation has no arguable connection.  Thereafter, on February 8, 2018, the Parties in the *Babbo* case informed the Court that they had engaged a private mediator and would attend a mediation on May 14, 2018.

According to papers filed on May 7, 2018 in the *Felidia* lawsuit, at the April 19, 2018 mediation in that case, the Parties agreed to "settle" the claims alleged in that case as well as the claims of the putative *Babbo* class.  It is clear from Defendants' preliminary approval papers that Lee Litigation did not do very much prior to settling claims on behalf of his ridiculously broad class.  Specifically, they did not interview or investigate potential claims through discussions with any Babbo employee or with any individual employee Lee Litigation seeks to represent, other than their named plaintiff who only worked at Felidia. (*See* ¶¶ 14-15 of Declaration of C.K.Lee at *Feldia* Dkt. No. 48.)

Defendants' behavior in this regard is stunningly deceptive.  Though engaging in extensive planning with us to mediate the putative *Babbo* class claims at the May 14th mediation, at no point prior to April 19th did Defendants inform us that they were mediating these claims elsewhere.  Even worse, *after* arriving at the purported settlement on April 19th, Defendants' counsel continued to work with our office to prepare for the May mediation of *class-wide* Babbo claims without any mention at all of the April 19th "settlement."  In fact, on numerous occasions over the past month (and as recently as last week), our office engaged in in-person, telephonic and email conversations with Defendants' counsel about issues relating to class-wide payroll documents they produced in anticipation of the *Babbo* meditation.  Defendants' counsel even continued to produce sample class-wide discovery, including a revised list of potential *Babbo* class members, *after* April 19th.  In doing so, Defendants intentionally allowed us to expend tens of hours—and thousands of dollars— preparing for a mediation on behalf of the putative *Babbo* class, whose claims Defendants had secretly "settled."

It was not until yesterday, after the motion for preliminary approval was filed, that Defendants finally informed us of the purported "settlement" and let us know that they would not be mediating with us for the putative *Babbo* class.  As set forth in greater detail below, it is clear that Defendants and their counsel in the *Felidia* Action rushed a slapdash and sloppy settlement in order to get it filed prior to the May 14th mediation.  In so doing, Defendants plainly acted in

bad faith by engaging in vexatious litigation and should be sanctioned. To be sure, Defendants cannot explain the following:

(A)    On January 11th they were suddenly able set up a mediation in the *Felidia* case that included the claims of putative *Babbo* class members, when only two days earlier they informed the Court they could not do so because of a possible conflict among the *Babbo* Defendants.

(B)    Our office brought a claim on behalf of a former Babbo employee and on behalf of the putative *Babbo* class.  *Felidia* counsel did not represent any Babbo employees, nor did they purport to be prosecuting claims on behalf of Babbo employees. Both cases were pending before Your Honor. Why in the world would Defendants mediate the putative *Babbo* class claims in the *Felidia* action without informing us or the Court, if not to throw in a release of the Babbo employees' claims on terms that were (too) favorable to Defendants?

(C)    After purportedly settling the putative *Babbo* class claims, Defendants continued to misleadingly engage us and allow us to waste significant time reviewing records in preparation for class-wide settlement negotiations when they knew they had already settled the Babbo claims.

(D)    Defendants either gave *Felidia* counsel prior to the mediation documents to review with respect to putative *Babbo* class members or they did not.  If they did, Defendants' deception has been going on for some time prior to the *Felidia* mediation.  If they did not, Lee Litigation, having only spoken to one Felidia employee, could not have conceivably conducted an adequate investigation the claims of the putative *Babbo* class members they now seek to settle.

## II.    DEFENDANTS SHOULD BE SANCTIONED

Defendants' conduct displayed an utter disregard and disrespect for our time and is plainly dishonest.  Defendants' counsel should thus be sanctioned by (a) having to pay for all of our firms' time and costs expended in preparing for the mediation, and (b) any other sanction the Court deems appropriate. *See* 28 U.S.C.S. § 1927 ("Any attorney […] who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct.); *see also Arclightz & Films Pvt. Ltd. v. Video Palace, Inc.*, No. 01 Civ. 10135 (SAS), 2003 U.S. Dist. LEXIS 19086 at *28 (S.D.N.Y. 2003) ("Section 1927 authorizes the imposition of sanctions when there is a clear showing of bad faith on the part of the attorney.")(internal quotation marks and citation omitted).

### III.    THE *FELIDIA* PLAINTIFF'S MOTION FOR PRELIMINARY APPROVAL SHOULD BE DENIED

In addition, in light of the circumstances described above, the Court should deny the *Felidia* Plaintiff's motion for preliminary approval because it is (a) the product of collusion, (b) patently unfair, at least with respect to the putative *Babbo* class members, and (c) clearly not the result of an adequate investigation of the putative *Babbo* class claims.

#### A.   The *Felidia* "Settlement" Was The Result Of Collusion

"In considering a motion for preliminary approval, the Court must consider, in light of the experience of counsel, the vigor with which the case was prosecuted, and the coercion or collusion that may have marred the negotiations themselves. The Court has a fiduciary duty to ensure that the settlement is not the product of collusion." *In re PaineWebber Pshps. Litig.*, 171 F.R.D. 104, 125 (S.D.N.Y. 1997) (citation and quotations omitted).  It is clear that the *Felidia* settlement, at least with respect to Babbo, is the product of collusion.  Defendants kept us at bay so that they could secretly throw in a complete release of putative *Babbo* class members' claims in an unrelated lawsuit.  Lee Litigation knew little about the putative *Babbo* class members' potential claims, having never spoken to any putative *Babbo* class members or to any of Defendants' service employees, other than their one *Felidia* named plaintiff.  Nevertheless, it is not surprising that, in order to secure a settlement of over $2 million, Lee Litigation would have been highly motivated to accommodate Defendants' request to include Babbo in a settlement at the expense of the *putative* Babbo class.

#### B.   The Settlement Is Unfair To The Putative *Babbo* Class

The settlement is also patently unfair.  Based on our calculations, the *Felidia* "settlement" will allocate only approximately $250,000 to the putative *Babbo* class members.  (The *Felidia* settlement purports to settle claims on behalf of 1,300 class members.  Only 157, *i.e.*, 12%, of these individuals worked at Babbo and 12% of $2.15 million is approximately $250,000.)  Under the agreement, this amount will be divided equally among all class members based on their weeks worked, irrespective of when those weeks were worked. (See § 3.1(A)(1) of the *Felidia* Settlement Agreement at *Feldia* Dkt. No. 48-1.)  This underscores how the putative *Babbo* class is being shortchanged by the settlement as follows:

- Based on our review of Babbo's records, class members that worked at Babbo in 2016 specifically had a "rock-solid" claim that Defendants were not entitled to pay them pursuant to the tip credit;
- Multiplying the tip credit that Babbo used  in 2016 by the number of hours putative *Babbo* class members worked in that year, together with liquidated damages, the putative *Babbo* class would have recovered approximately $200,000 for that year alone;
- There were other years in which Babbo gave putative *Babbo* class members almost fully compliant tip credit notices;

These facts establish two things: (a) the entire putative *Babbo* class is getting little more ($250,000), for a six year period, than what they would be receiving for just 2016 tip credit claims at trial alone ($200,000), and (b) the employees who worked in 2016 are sharing their money equally with people who worked in other years without any recognition of the relative strength of the employees who worked in 2016 over other years.  As such, it is clear that both the settlement amount and mode of allocation are patently unfair to the putative *Babbo* class members and preliminary approval should therefore be denied. *See e.g., In re Indep. Energy Holdings PLC Sec. Litig.,* 2003 U.S. Dist. LEXIS 17090, at \*15 (S.D.N.Y. Sep. 26, 2003)("In approving a plan of allocation, a court's primary responsibility is to ensure that the distribution of funds is fair and reasonable".); *Weng v. T&W Rest., Inc.,* No. 15-CV-08167 (PAE) (BCM), 2016 U.S. Dist. LEXIS 83217, at \*7 (S.D.N.Y. June 22, 2016)(In a wage and hour settlement, "the distribution of the settlement among those plaintiffs under the Agreement does not appear to correspond proportionally to any of the estimates previously presented. Without more explanation for the distribution of funds, I cannot approve the Agreement.)(citations omitted).

   C. *Felidia* **Counsel And Their Named Plaintiff Are Inadequate Representative Of The Putative** *Babbo* **Class**

        Finally and perhaps most significantly, under Rule 23, "a court that certifies a class must appoint class counsel . . . [who] must fairly and adequately represent the interests of the class." Fed. R. Civ. P. 23(g)(1)(A), (B).  In making this determination, the Court must consider, among other things, counsel's work "identifying or investigating potential claims in the action." Fed. R. Civ. P. 23(g)(1)(C).  A consideration of adequacy turns on whether or not counsel has properly apprised itself of the merits of all claims, and whether the proposed apportionment is fair and reasonable in light of that information." *In re PaineWebber Pshps. Litig*., 171 F.R.D. 104, 133 (S.D.N.Y. 1997).  Here, the only investigation that counsel in *Felidia* claims to have done at all was to interview one individual who worked at only Felidia to review payroll records. (*See* ¶¶ 14-15 of Declaration of C.K.Lee at *Feldia* Dkt. No. 48.)  *Felidia* counsel does not claim to have spoken to anyone at Babbo and could not possibly have known the facts on the ground at Babbo, such as for example the nature of the putative Babbo class "80/20" claims. (*See Babbo* Complaint at ¶¶ 27-28, *Babbo* Dkt. No. 1.)  This is plainly underscored by the fact that the *Felidia* named plaintiff, until he was apparently asked to do so by Defendants' counsel, never even intended to assert claims on behalf of Babbo employees. *Felidia* counsel also did not make an effort to learn about the nature of these claims by speaking with our office who actually represents a Babbo employee.  The insufficiency of the information review by Lee Litigation is alone is plainly enough to deny approval. *See, e.g., Oladapo v. Smart One Energy, LLC*, No. 14-CV-7117 (LTS) (BCM), 2017 U.S. Dist. LEXIS 187299, at \*34-35 (S.D.N.Y. Nov. 9, 2017) (denying motion for preliminary approval of class action where the Court could not "determine whether plaintiff's counsel developed 'an adequate appreciation of the merits of the case' before settling it."), *report and recommendation adopted*, 2017 U.S. Dist. LEXIS 197039 (S.D.N.Y. Nov. 30, 2017); *Zink v. First Niagara Bank, N.A.*, 155 F. Supp. 3d 297, 314 (W.D.N.Y. 2016), *report and recommendation adopted, id.* at 302 ("[W]here the proposed settlement fails to adequately protect the interest of absent class members, preliminary approval should be denied.").

IV.     **CONCLUSION**

We anticipate that Defendants—in an attempt to divert attention away from their own deceptive behavior—will claim that we are crying "sour grapes" because of a lost potential class action settlement in our case. The Court should not allow Defendants to successfully create such a diversion. The facts here are simple. Defendants held us at bay and mediated claims relating to Babbo with an individual who had no business mediating such claims and could not have adequately investigated them. As a result, Defendants and Lee Litigation got the putative *Babbo* class a bad deal. That explains why they kept it a secret for as long as possible. It is plainly within Your Honor's role to prevent this miscarriage of justice. In addition, the Court should also hold Defendants accountable for making us spin our wheels considerably on a matter that they believed to have already been resolved.

Based on the foregoing, we respectfully request that the Court (a) sanction Defendants and Order them to pay for the time and expenses we incurred in preparing for a class-wide mediation based on their blatant deceptions, and (b) deny the motion for preliminary approval because the "settlement" is the product of collusion, is facially unfair and the named Plaintiff and Lee Litigation are not adequate representatives of the proposed class of employees.

In the event the Court would like to hold a Conference on these issues or requires additional briefing, we are available at the Court's convenience. In addition, if the Court grants our request for sanctions, we are prepared to submit a formal motion within 14 days of any such Order.

Respectfully submitted,

**JOSEPH & KIRSCHENBAUM LLP**

/s/*D. Maimon Kirschenbaum*
D. Maimon Kirschenbaum
Josef Nussbaum
32 Broadway, Suite 601
New York, NY 10004
(212) 688-5640

 cc: All Counsel of Record (via ECF)